UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMES BARNES,

      Petitioner,

v.                                CASE NO. 6:13-cv-1698-Orl-37DAB

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____

## ORDER

This case is before the Court on the Petition for Writ of Habeas Corpus (Doc. 1)

filed by James Barnes.   Pursuant to the instructions of the Court, Respondents filed a

Response to the Petition for Writ of Habeas Corpus (Doc. 21).   Thereafter, Petitioner filed

a Reply to the Response (Doc. 25).   For the reasons set forth below, the petition is denied.

## I.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

The factual history, as set forth by the Supreme Court of Florida, is as follows:

> The facts of the murder, based upon Barnes' written and taped
> statements, and as shown in the forensic evidence presented during the
> penalty phase, are summarized here.   On the night of April 20, 1988,
> Barnes went to Patricia "Patsy" Miller's condominium unit, located at the
> River Oaks Condominiums in Melbourne, Brevard County, Florida.   He
> did not know Ms. Miller, although he may have encountered her before at
> the condominium complex, where he knew several of the residents, or at
> Satellite Beach.   Once he arrived at Miller's condominium, he took off all
> his clothes in order not to leave evidence and obtained entry by removing
> a screen and entering through a bedroom window.   Barnes admitted that
> he went there with the intent to both rape and kill Miller.   Once inside, he
> armed himself with a knife from the kitchen.   After surreptitiously
> watching Miller go about her normal activities for a short period of time, he

confronted her in the bathroom and forced her at knife-point to the bedroom where he sexually battered her.   He then bound her hands behind her back with shoelaces that he had removed from some tennis shoes, tied her feet together, and sexually battered her again.   Barnes admitted that he tried to strangle her to death with a belt which he had removed from her terrycloth robe but was not successful, so he then bludgeoned the back of her head with a hammer that he found in her bedroom.

Barnes confessed that he took a bank card from her wallet but could not later make it work at an ATM.   He also collected everything he touched in Miller's residence, as well as the clothing Miller was wearing, and placed them in a bag.   Barnes then set fire to the bed where Miller's body lay in order to eliminate forensic evidence left there.   Before leaving in his car, Barnes took all the items that he had bagged, as well as the window screen that he had removed, and left to dispose of the items at another location.

Shortly after 11 p.m., firefighters responded to a fire alarm at the condominium complex and found Miller's charred body face down on the bed in her master bedroom, with her hands bound behind her back with shoelaces.   There were varying degrees of burns over her body.   The Medical Examiner testified that the cause of death was blunt-force trauma from multiple blows to Miller's head consistent with being beaten with a hammer.   Signs of attempted strangulation, including a fractured hyoid bone, which the doctor testified would have taken a great deal of force to accomplish, were also discovered in the autopsy.   The Medical Examiner determined that Miller's body was set ablaze after she died from the multiple blows to her head.   Even though Barnes attempted to destroy forensic evidence by setting the bed ablaze, sperm was recovered from Miller and was preserved for DNA testing.

Within one week of the murder, the police considered Barnes as a suspect and he was questioned by Sergeant Dennis Nichols of the Melbourne Police Department.   At that time, Barnes denied any involvement with the murder and told Sergeant Nichols that he had never been inside Ms. Miller's apartment.   He also denied knowing Miller, although he indicated he may have seen her once in Satellite Beach. Barnes agreed to give a sample of his blood for possible DNA comparison, but in 1988 the available method of DNA testing was inadequate to produce

a match and the case remained unsolved.

In 1998, Barnes was serving a life sentence for the 1997 first-degree strangulation murder of his wife, Linda Barnes.   With advanced techniques for DNA testing, specifically the polymerase chain reaction (PCR) test, sperm removed from Miller's vagina, which was resubmitted for testing in 1997, produced a positive match to Barnes.   Subsequently, Sergeant Nichols and Brevard Sheriff's Office Lieutenant Todd Goodyear traveled to the prison to speak with Barnes about the murder, but he refused to speak to them.   For unspecified reasons, charges were not filed against Barnes for the Miller murder.

In 2005, while Barnes was still incarcerated on his life sentence for murdering his wife, he wrote three letters to Assistant State Attorney Michael Hunt, a prosecutor who was involved in the case concerning the death of Barnes' wife.   The letters to Hunt were dated October 10, 2005, December 7, 2005, and December 21, 2005.   In the October 10, 2005, letter, Barnes requested that an interview be held at the correctional facility, with fellow inmate Sherman Insco asking Barnes questions about the Miller case, while law enforcement officers videotaped the interview.

The interview occurred on November 1, 2005.   In that videotaped interview, Barnes admitted to the foregoing facts of the burglary, sexual batteries, murder, and arson.   He explained how he entered the condominium unit through a bedroom window and said he was in the condominium for approximately forty-five minutes to one hour.   During his interview, Barnes described with accuracy Miller's physical appearance, the interior of the apartment, and specific objects he saw in the apartment, including a bicycle, basket-weaving supplies, divorce paperwork, a stethoscope, and oversized curtains.   Further, his descriptions of the homicide, the sexual batteries, and the arson were consistent with the evidence gathered by police.

*Barnes v. State*, 29 So. 3d 1010, 1015-16 (Fla. 2010) ("*Barnes I*").

The State charged Petitioner with first degree murder (Count One), burglary of a dwelling with an assault or battery (Count Two), two counts of sexual battery by use or threat of deadly weapon (Counts Three and Four), and arson of a dwelling (Count Five).

3

(Ex. A-8 at 1454-55).[1]   At his initial appearance, Petitioner waived his right to counsel and moved to proceed *pro se*.   (Ex. A-1 at 4-5).   The trial court conducted a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), found Petitioner competent to waive his right to counsel, and allowed him to proceed *pro se* but appointed standby counsel. (*Id*. at 9-30).   Petitioner pled guilty as charged and waived his right to a jury during the penalty phase.   (*Id*. at 30-53).

The trial court held a penalty-phase *Spencer* [2] hearing as the penalty-phase evidentiary hearing because Petitioner waived an advisory jury.   (Ex. A-3 at 393-556; Ex. A-4 at 557-707; Ex. A-5 at 708-835).   At the *Spencer* hearing, the State presented evidence in support of aggravating factors, and Petitioner relied on the fact that he came forward and took responsibility for the murder as mitigation evidence.   (*Id*.).   Thereafter, over Petitioner's objection, the trial court appointed special counsel to investigate and present any other mitigation evidence at the continuation of the *Spencer* hearing on November 16, 2007.   (Ex. A-5 at 820-48; Ex. A-7 at 1083-1281; Ex. A-8 at 1282-94).

The trial court found six aggravating factors and assigned the following weight to each one: (1) the murder was committed by a person under sentence of imprisonment

---

[1]References to the record will be made by citing to the particular volume and page of the advanced appendix.   For example, "Ex. A at 1" refers to page one of the volume labeled Exhibit A.

[2] *Spencer v. State*, 615 So. 2d 688, 691 (Fla. 1993) (holding that the trial court should conduct a hearing to allow the parties to be heard and to allow presentation of additional evidence before sentencing).   The trial court conducted the *Spencer* hearing in this case as the penalty-phase proceeding because Barnes waived an advisory jury.

(great weight); (2) Petitioner was previously convicted of another capital felony or felony involving use or threat of violence (the murder of his wife) (great weight); (3) the murder was committed while Petitioner was engaged in commission of a sexual battery and burglary (great weight); (4) the murder was committed for the purpose of avoiding or preventing lawful arrest (great weight); (5) the murder was especially heinous, atrocious or cruel (great weight); and (6) the murder was cold, calculated and premeditated (great weight).   (Ex. A-11 at 2030-45).   The trial court found one statutory mitigator, that Petitioner was under the influence of extreme mental or emotional disturbance, which it accorded slight weigh, and nine nonstatutory mitigators: (1) Petitioner came forward and admitted his involvement in the unsolved crime (little weight); (2) Petitioner took responsibility for his acts (little weight); (3) Petitioner was under the influence of a mental or emotional disturbance (little weight as a duplicating mitigator); (4) Petitioner had experienced prolonged drug use (little weight); (5) Petitioner did not have the benefit of a loving relationship with his mother (little weight); (6) Petitioner did not have the benefit of a loving relationship with his father (little weight): (7) Petitioner was sexually abused as a child (slight weight); (8) Petitioner has taken steps to improve himself (little weight); and (9) Petitioner is a functional and capable person and has demonstrated by his action and participation in this case that he has sufficient intelligence and capabilities to contribute to society (little weight).   (*Id.* at 2045-54).   The trial court concluded that "each of the six aggravating standing alone outweigh all of the mitigating circumstances

5

combined." (*Id.* at 2055). The court imposed a sentence of death for the murder, life sentences for the burglary with battery and sexual battery counts, and a thirty-year term of imprisonment for the arson. (*Id.* at 2055-56). The Supreme Court of Florida affirmed Petitioner's convictions and sentences. *Barnes I*, 29 So. 3d at 1030. Petitioner filed a petition for writ of certiorari with the Supreme Court of the United States, which denied the petition. (Ex. E); *see also Barnes v. Florida*, 526 U.S. 901 (2010).

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.851 of the Florida Rules of Criminal Procedure. (Ex. F-3 at 478-503). The state court denied the motion. (Ex. F-5 at 702-17). Petitioner appealed, and the Supreme Court of Florida affirmed. *Barnes v. State*, 124 So. 3d 904 (Fla. 2013), *as revised on denial of reh'g* (Oct. 17, 2013) ("*Barnes II*").

## II.   GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law," *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's

evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A.   STANDARD OF REVIEW UNDER THE AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Knowles v. Mirzayance*, 556 U.S. 111, 114 (2009); *Brown v. Payton*, 544 U.S. 133, 141 (2005).   The phrase "clearly established Federal law," encompasses only the holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision."   *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Schwab v. Crosby*, 451 F.3d 1308, 1324 (11th Cir. 2006) (stating that the federal law relevant to this analysis is the Supreme Court of the United States precedent "in existence at the time the conviction became final").

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."   *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).   The meaning of the clauses was discussed by the Eleventh

Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the
> state court arrives at a conclusion opposite to that reached by [the United
> States Supreme Court] on a question of law or if the state court decides a
> case differently than [the United States Supreme Court] has on a set of
> materially indistinguishable facts.   Under the 'unreasonable application'
> clause, a federal habeas court may grant the writ if the state court identifies
> the correct governing legal principle from [the United States Supreme
> Court's] decisions but unreasonably applies that principle to the facts of the
> prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas

relief is appropriate only if that application was "objectively unreasonable."   *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the

state court's decision "was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding."   A determination of a factual

issue made by a state court, however, shall be presumed correct, and the habeas petitioner

shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence.   *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.   STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668

(1984), established a two-part test for determining whether a convicted person is entitled

to relief on the ground that his counsel rendered ineffective assistance: (1) whether

counsel's performance was deficient and "fell below an objective standard of

reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3]   *Id.* at 687-88.   A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.   *Id.* at 689-90.   "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done.   Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.   *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).   Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."   *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

### C.   EXHAUSTION AND PROCEDURAL DEFAULT

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.   28 U.S.C. § 2254(b); *O 'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)   (i)   there is an absence of available State corrective process; or
>
>        (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted).   The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.   *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).   The Supreme Court of the United States has

observed that "Congress surely meant that exhaustion be serious and meaningful."

*Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).   Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court.   Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

A federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law.   *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012).   In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court.   *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show

both "cause" for the default and actual "prejudice" resulting from the default.   "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).   To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.   *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."   *Murray v. Carrier*, 477 U.S. 478, 496 (1986).   Actual innocence means factual innocence, not legal insufficiency.   *Bousley v. United States*, 523 U.S. 614, 623 (1998).   To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense.   *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial."   *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.   ANALYSIS

#### A.   GROUND ONE

Petitioner asserts the trial court violated his Sixth Amendment right to represent

himself.   (Doc. 1 at 4).   In support of this ground, Petitioner argues that the trial court's appointment of special counsel to present mitigation evidence after Petitioner waived his right to counsel violated his right to self-representation.   (*Id*.)   Petitioner notes that he chose not to present mitigation evidence and the appointment of special counsel contradicted his decision/strategy.   (*Id*.).

Petitioner raised this ground on direct appeal.   The Supreme Court of Florida concluded "the trial court acted properly . . . in appointing independent court counsel, who did not represent Barnes but was directed to assist the court by investigating and presenting mitigation."   *Barnes I*, 29 So. 3d at 1023.   The Court noted that the Supreme Court of the United States has recognized that in cases in which the defendant has chosen to represent himself but standby counsel has been appointed by the trial court, "'standby counsel may participate in the trial proceedings, even without the express consent of the defendant, as long as that participation does not 'seriously undermin[e]' the 'appearance before the jury' that the defendant is representing himself.'"   *Id.* at 1026 (quoting *Martinez v. Court of Appeal of California, Fourth Appellate District*, 528 U.S. 152, 162 (2000)). The Court reasoned:

> Because the trial court and this Court each has a constitutional obligation to ensure that Barnes received individualized sentencing and that the death penalty is fairly and constitutionally imposed, Barnes' right to self-representation was not violated by the appointment of independent counsel under the facts and circumstances present in this case.   Mitigation counsel was appointed, not to supplant Barnes as his own counsel, but to assist the court by presenting mitigation evidence where Barnes refused to do so.   The mitigation was not in conflict with any evidence presented by

Barnes and was not in conflict with his mitigation theory that he confessed and took responsibility.   In fact, the trial court did find his confession and acceptance of responsibility to be nonstatutory mitigation.   Based on the mitigation presented by special counsel, the trial court also found the statutory mitigator that Barnes was under the influence of a mental or emotional disturbance at the time of the offense, as well as nonstatutory mitigation that he had an abusive childhood, lacked a loving relationship with his parents, and was a functional and capable person with a capacity to contribute to society.   Even so, after engaging in its constitutionally required weighing process, the trial court concluded that each one of the six aggravators outweighed all the mitigation found by the court.

We decline to hold, as Barnes requests, that a trial court may never consider other mitigation contained in the record or appoint special mitigation counsel to assist the court, where a pro se defendant's refusal to present mitigating evidence impedes or prevents the trial court's exercise of its constitutional duty to provide individualized sentencing.

*Id.* at 1026.

A criminal defendant has a constitutional right to represent himself and conduct his own defense if he voluntarily, knowingly, and intelligently elects to do so.   *Faretta v. California*, 422 U.S. 806, 807 (1975); *see also McKaskle v. Wiggins*, 465 U.S. 168, 187 (1984). However, "a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary."   *Faretta*, 422 U.S. at 834 n.46.   "The *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial."   *McKaskle*, 465 U.S. at 174.   To determine whether

a defendant's *Faretta* rights have been respected, the primary issue is whether "the defendant had a fair chance to present his case in his own way."   *McKaskle*, 465 U.S. at 177.   In the context of standby counsel's participation, the Supreme Court explained:

> A trial judge, who . . . receives a defendant's original *Faretta* request and supervises the protection of the right throughout the trial, must be considered capable of differentiating the claims presented by a *pro se* defendant from those presented by standby counsel.   *Cf. United States v. Martinez*, 597 F.2d 509, 510-511 (CA5), *cert. denied*, 444 U.S. 979, 100 S. Ct. 479, 62 L.Ed.2d 405 (1979); *United States v. Penick*, 496 F.2d 1105, 1108 (CA7), *cert. denied*, 419 U.S. 897, 95 S. Ct. 177, 42 L.Ed.2d 141 (1974); *United States v. Reeves*, 348 F.2d 469 (CA2 1965), *cert. denied*, 383 U.S. 929, 86 S. Ct. 936, 15 L.Ed.2d 848 (1966).   *Accordingly, the appearance of a pro se defendant's self-representation will not be unacceptably undermined by counsel's participation outside the presence of the jury.*
>
> Thus, *Faretta* rights are adequately vindicated in proceedings outside the presence of the jury if the *pro se* defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the *pro se* defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel.

*Id.* at 179 (emphasis added). Consequently, standby "counsel need not be excluded altogether, especially when the participation is outside the presence of the jury or is with the defendant's express or tacit consent."   *Id.* at 188.

In the instant case, Petitioner voluntarily, knowingly, and intelligently waived his right to counsel throughout the state court proceedings, and the state court appointed standby counsel.   *See* Ex. A-1 at 11-37; Ex. A-2 at 195-201.   Petitioner further waived his right to an advisory jury at his penalty proceeding and chose to proceed before the trial judge only.   (Ex. A-1 at 51-62).   Petitioner told the trial court that his "mitigation

strategy" was to rely on the fact that he came forward and willingly admitted he committed the offenses.   (*Id*. at 57; Ex. A-2 at 214-16; Ex. A-5 at 813-14).

Pursuant to Florida law, the trial judge appointed special counsel over Petitioner's objection to act on behalf of the court to investigate and present only mitigating evidence. (Ex. A-5 at 816-34).   Special counsel obtained various school, medical, and prison records and called a mental health expert, Dr. Riebsame, who testified Petitioner was under the influence of extreme mental or emotional disturbance at the time of the offenses.   (Ex. A-7 at 1174-1205).   Petitioner cross-examined Dr. Riebsame.   (*Id*. at 1259-69, 1278-81).   As a result of special counsel's presentation of evidence, in addition to the two mitigators offered by Petitioner, the trial judge found eight more mitigating factors, including one statutory mitigator.   (Ex. A-11 at 2045-54).

Petitioner has not established that the trial court's appointment of special counsel to investigate and present mitigation evidence is contrary to, or an unreasonable application of, *Faretta*.   Petitioner was allowed to represent himself throughout the state court proceedings.   Petitioner filed and argued numerous motions, made objections, argued points of law, questioned witnesses, and addressed the court.   Petitioner was allowed to present his theory of mitigation.   Consequently, Petitioner had a fair chance to present his case in his own manner.

Moreover, the evidence presented by special counsel did not contradict Petitioner's mitigation strategy or the evidence Petitioner presented.   In fact, the trial

16

court found two mitigating factors based on Petitioner's theory of mitigation. Furthermore, special counsel was appointed to act on the behest of the trial court and not to represent Petitioner.   Petitioner had an opportunity to thoroughly cross-examine the witness presented by special counsel and to object to or refute any evidence presented by special counsel.   Most importantly, there was no jury in this case but only a trial judge presiding over Petitioner's penalty phase.   As recognized by the Supreme Court in the context of standby counsel, "the appearance of a *pro se* defendant's self-representation [is] not . . . unacceptably undermined by counsel's participation outside the presence of the jury." *McKaskle*, 465 U.S. at 179.   Thus, to the extent special counsel could be perceived as representing Petitioner, this perception did not unacceptably undermine Petitioner's self-representation before the trial judge.[4]

In sum, Petitioner has not cited nor is this Court aware of any Supreme Court precedent prohibiting a state court from appointing special counsel to act on behalf of the court to investigate and present mitigation evidence in cases in which a defendant chooses to proceed *pro se*.[5]   Accordingly, ground one is denied pursuant to section

---

[4] The Court notes that any error in the appointment of special counsel in this case inured to the benefit of Petitioner because the trial court found eight additional mitigating factors as a result of the appointment.   Nevertheless, a violation of the right to self-representation is not subject to harmless error analysis.   *Strozier v. Newsome*, 871 F.2d 995, 997 (11th Cir. 1989).

[5] In *United States v. Davis*, 285 F.3d 378, 381 (5th Cir. 2002), the United States Court of Appeals for the Fifth Circuit held in a mandamus action that the district court's appointment of independent counsel to present mitigation evidence at the penalty phase

2254(d).

**B.    GROUND TWO**

Petitioner contends the trial court erred in permitting hearsay evidence to be considered during the penalty phase in violation of *Crawford v. Washington,* 541 U.S. 36 (2004).    (Doc. 1 at 5).    Specifically, Petitioner complains that the trial court erroneously allowed the presentence investigation report ("PSI") to be introduced into evidence. (*Id*.).    Petitioner argues that the PSI contained prejudicial statements and was more prejudicial than mitigating.    (*Id*.).    Among the statements Petitioner notes constituted hearsay are the following: (1) Petitioner "had always been a pyromaniac since an early age, and set fire to other people's homes," (2) Petitioner "is a con-artist and sociopath,"

---

of a capital case violated the defendant's right to self-representation.    In denying relief on this ground, the Supreme Court of Florida distinguished *Davis* from this case.    *See Barnes I,* 29 So. 3d at 1024-25 (concluding that contrary to the facts in *Davis*, the mitigation evidence presented by independent counsel in Petitioner's case did not conflict with anything presented by Petitioner and there was no jury in Petitioner's case).    The Court agrees that *Davis* is distinguishable because in this case there was no jury and nothing presented by special counsel conflicted with any evidence offered by Petitioner in support of mitigation.

Moreover, the procedural posture of *Davis* is wholly different from the instant case.    *Davis* involved a federal criminal proceeding and mandamus action, whereas the instant case is a habeas action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Consequently, this case is governed by the deferential standard imposed by section 2254(d).    Thus, in the absence of a determination by the Supreme Court of the United States that the appointment of special counsel to act on behalf of the state court to present mitigation evidence in a capital non-jury proceeding violates the right to self-representation, Petitioner is not entitled to habeas relief.

(3) Petitioner "physically assaulted and threatened to kill his mother," (4) Petitioner "sexually assaulted his two sisters[,]" (5) Petitioner "killed the family cats," (6) Petitioner "beat-up children at boy scouts, little league and church," (7) Petitioner "could not be rehabilitated," (8) Petitioner's "ability to lie is noteworthy as well as his lack of remorse," and (9) Petitioner's "score of 36 on the Hare PCL-R classifies him as a psychopath." (*Id.* at 5-6).

Petitioner raised this ground on direct appeal. The Supreme Court of Florida determined the claim was procedurally barred from review and otherwise without merit. *Barnes I*, 29 So. 3d at 1026. The Court noted that Petitioner failed to make specific objections to any statements contained in the PSI and thus had not preserved the claim. *Id.* at 1026-27. The Court further reasoned that any error in the admission of the PSI was harmless because many of the statements about which Petitioner complained (1) were not contained in the PSI, (2) were admitted through the testimony of Dr. Riebsame, who was subject to cross-examination, and (3) were not included in the sentencing order. *Id.* at 1027. Finally, the Court reasoned that many of the statements about which Petitioner complained supported the extreme mental disturbance mitigator and no basis existed to find that the trial court's consideration of the PSI resulted in a death sentence in light of the weight given the six uncontested aggravators. *Id.*

The record reflects Petitioner moved to strike the PSI and generally objected to its admission. *See, e.g.,* App. A-2 at 289-95; App. A-7 at 1107-12, 1126-32. The trial judge

overruled the motion and general objections, noting Petitioner needed to make specific objections to the portions of the PSI he believed constituted inadmissible hearsay. *Id.*

Petitioner did not object to any specific portions of the PSI so as to preserve the objection for appellate review under Florida law.   Under Florida law, "an appellate court may review only those questions properly presented to the trial court." *Williams v. State*, 414 So. 2d 509, 511 (Fla. 1982) (citing *Mariani v. Schleman*, 94 So. 2d 829 (Fla. 1957)). "Proper presentation requires a contemporaneous objection" that is "specific enough 'to apprise the trial judge of the putative error and to preserve the issue for intelligent review on appeal.'" *Id.* (quoting *Castor v. State*, 365 So. 2d 701 (Fla. 1978)).   The Supreme Court of Florida found the claim to be procedurally barred from review because Petitioner failed to object to specific statements contained in the PSI.   Thus, the state court denied this ground based on an adequate and independent procedural ground under state law. Thus, absent an exception to the procedural default, ground two is procedurally barred from review.

Petitioner has not demonstrated cause or prejudice to overcome the procedural default.   Moreover, Petitioner has not shown he is actually innocent to warrant application of the fundamental miscarriage of justice exception.   Thus, ground two is procedurally barred from review.

Alternatively, assuming ground two was not procedurally barred, it is subject to denial pursuant to section 2254(d).   The Confrontation Clause of the Sixth Amendment

provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ."   U.S. Const. amend. VI.   In *Crawford*, the Supreme Court of the United States held that "testimonial statements" offered into evidence from witnesses who are not present to testify must be excluded if offered against the accused to establish the truth of the matter asserted.   541 U.S. at 68.   The Court determined that testimonial statements include "at a minimum . . . prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations."   *Id*.   Any constitutional error resulting from the admission of such testimony is subject to harmless error analysis.   *See United States v. Travis*, 311 F. App'x 305, 311 (11th Cir. 2009) (noting that Confrontation Clause errors are subject to harmless error analysis); *see also United States v. Dupree*, 240 F. App'x 382, 390 (11th Cir. 2007) (concluding that violation of Confrontation Clause was subject to harmless error analysis).   "[C]onstitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

To the extent any of the statements contained in the PSI about which Petitioner complains were erroneously admitted into evidence, the error was harmless.   None of the statements were used by the trial court to find any of the six aggravating factors.   *See* Ex. A-11 at 2030-45.   Moreover, Dr. Riebsame testified that his diagnostic impression

21

was that Petitioner exhibited symptoms of anti-social personality disorder at the time of the offenses, and he opined that as a result, Petitioner was under the influence of an extreme mental or emotional disturbance at the time of the offenses.   (Ex. A-7 at 1182-85).   Dr. Riebsame further noted that Petitioner displayed behaviors or criteria consistent with a psychopathic personality.   (Ex. A-7 at 1188-94).   Therefore, the trial judge heard evidence that Petitioner suffered from personality disorders and found a statutory mitigator to be applicable as a result.   (Ex. A-11 at 2047-49).   Consequently, the statements in the PSI concerning Petitioner's mental health did not prejudice him because other similar admissible evidence was presented and found to be mitigation evidence.   Additionally, none of the other statements in the PSI referenced in the petition were noted or used by the trial judge in the sentencing order.   *See* A-11 at 2023-55. Finally, the trial judge found six aggravating factors based on overwhelming and unrefuted evidence and explicitly found that "each of the six aggravating factors standing alone outweigh all of the mitigating circumstances combined."   (*Id*. at 2055).   Given the substantial weight afforded to the aggravators, the admission of the aforementioned statements clearly did not have a substantial and injurious effect or influence on Petitioner's sentence.   Accordingly, ground two is denied.

### C.   GROUND THREE

Petitioner asserts standby counsel rendered ineffective assistance by failing to move for a competency determination and the trial court erred by not conducting a

competency hearing.   (Doc. 1 at 7).   In support of this ground, Petitioner argues that standby counsel and the trial court respectively should have requested a competency determination and conducted a competency hearing because they knew Petitioner had been diagnosed with a personality disorder and "Baker Acted" and did not understand the adversarial nature of the process.   (Doc. 1 at 7-12; Doc. 14 at 15-31).

Petitioner raised this ground in his Rule 3.851 motion.   The Supreme Court of Florida determined that Petitioner's claim of trial court error was procedurally barred because it was not raised on direct appeal and was otherwise without merit.   *Barnes II,* 124 So. 3d at 911-16.   The Court further determined that standby counsel had no obligation to request a competency determination nor did anything in the record provide standby counsel with a reasonable basis to request one.   *Id.* at 917-18.   The Court reasoned i*nter alia* as follows:

> In the present case, the trial court record supports the trial judge's conclusion that Barnes was intelligent, understood court procedure, and was completely capable of representing himself.   As the postconviction court noted, Barnes advised the trial court at his *Faretta* hearing that he had one year of college and that he had prior experience, education, and knowledge of the court system.   Barnes stated that he had taken several criminal justice courses and was a certified law clerk at the Department of Corrections.   Barnes advised the trial court that he had worked in the prison law library for twenty years and had watched a criminal trial.   He stated that he had never been treated for any mental illness, although he had been diagnosed as having a personality disorder.   The fact that he was observed for three days at a state hospital and then released does not provide a reasonable ground for the trial judge to believe Barnes was incompetent.   Similarly, the fact that Barnes told the trial court that he had once been diagnosed with a personality disorder does not obligate the trial court to order a competency evaluation.   "[N]ot every manifestation of

23

mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Card v. Singletary,* 981 F.2d 481, 487–88 (11th Cir. 1992) (quoting *U.S. ex rel. Foster v. DeRobertis,* 741 F.2d 1007, 1012 (7th Cir. 1984)). Moreover, we noted in *Nelson* that the fact of a prior suicide attempt and the administration of a powerful antipsychotic drug did not necessarily create a reasonable doubt of defendant's competency or render the defendant incompetent to proceed. *See Nelson,* 43 So.3d at 29.

The record reflects that throughout the trial proceedings, Barnes filed and argued numerous motions before the court. He lodged objections to evidence and comported himself well in court. The transcript of the May 2, 2006, *Faretta*/plea hearing shows that Barnes appeared alert and knowledgeable. Throughout the hearing, Barnes made clear that he understood the consequences of his decision to represent himself and to plead guilty, that he knew the possible sentence was death, and that he understood an attorney is trained to assist in such proceedings. Nothing in the record of the May 2, 2006, hearing, or thereafter, would reasonably have caused the court to doubt that Barnes was competent. In fact, the trial court stated at the *Faretta* hearing:

> THE COURT: All right. Mr. Barnes, at this time then I'm going to find that you are competent. In fact, you appear to be extremely competent. Your demeanor, the way you've addressed the [c]ourt, the way you—I mean, not only what you've said but your presentation convinces me that you are competent, you understand what is happening here today, that you have knowingly, freely and voluntarily exercised your decision to represent yourself, that you are waiving the right to counsel for no other reason other than the fact that you want to represent yourself and that you—you know, this is a knowing and intelligent waiver and that you have the capacity to make that knowing and intelligent waiver and that you understand the advantages and disadvantages of representing yourself.

> . . . .

> BY THE COURT: Okay. Mr. Barnes, because I'm finding you intelligent and knowingly making this request, that you have the ability to make this request because you are intelligent and

competent to make this request later down the line if you—for whatever reason your strategy, whatever that strategy may be does not work out, you're not going to be able to say well, you know, I was representing myself. . . .   And do you understand that?

A [BARNES] I understand.   I'm ready to enter a plea right now on all cases.

The trial court clearly believed, based on the colloquy that occurred and on Barnes' conduct and statements, that Barnes was competent even though no formal competency evaluation or determination was made. Nothing in the trial proceedings provided a reasonable ground for the trial court to doubt Barnes' competency to proceed such that a competency evaluation should have been ordered. . . .

. . .

In this case, the facts asserted by Barnes in his motion do not raise a valid question as to his competency to stand trial, and our review of the trial court record discloses no basis on which to conclude otherwise. . . .

In denying an evidentiary hearing on this claim, the postconviction court concluded that Barnes failed to allege or identify clear and convincing evidence necessary to support a substantive claim of incompetency, stating:

Defendant cannot make the requisite showing of incompetence for a substantive claim of incompetency as shown by the record and cited in the preceding paragraphs of this Order.   The Defendant consulted with standby counsel and talked with court counsel.   No counsel, prosecutor, or judge had any doubt the Defendant was not competent as shown by the record.   Judge Davidson found the Defendant "extremely competent" to represent himself after learning from the Defendant that he had been Baker Acted in 1990, had been diagnosed with borderline personality disorder, and hearing Defendant's comments regarding mitigation evidence. Judge Davidson had the opportunity to observe the Defendant on several occasions and numerous *Faretta* inquiries were conducted throughout the case because the Defendant continued to reject offers of counsel. . . .   In the subject case, there were no indications of Defendant's incompetence, distinguishable factually from the cases

25

cited by the Defendant in his postconviction motion.  The record shows that the Defendant was not only competent, but also intelligent.  There was no reason for a competency evaluation.

We agree.  As discussed earlier, nothing alleged in Barnes' motion or cited by Barnes from the record of the May 2, 2006, hearing or elsewhere in the trial record would provide any evidence, not to mention clear and convincing evidence, creating a real, substantial, and legitimate doubt that Barnes was convicted and sentenced while incompetent to proceed.  Thus, for these reasons the circuit court correctly denied Barnes' substantive due process claim without a hearing.

*Id.* at 912-16.

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, clearly established federal law.  A criminal defendant must be mentally competent to stand trial.[6]  *Drope v. Missouri*, 420 U.S. 162 (1975).  "The legal test for mental competency is whether, at the time of trial and sentencing, the petitioner had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether he had 'a rational as well as factual understanding of the proceedings against him.'"  *Adams v. Wainwright*, 764 F.2d 1356, 1360 (11th Cir. 1985) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

In analyzing a claim that counsel rendered ineffective assistance by failing to obtain a psychological examination to assess the defendant's competency to stand trial or

---

[6] The competency standard for pleading guilty is the same as the competency standard for standing trial.  *Godinez v. Moran*, 509 U.S. 389 (1993); *Stinson v. Wainwright*, 710 F.2d 743, 745 (11th Cir. 1983); *Malinaukas v. United States*, 505 F.2d 649, 654 (5th Cir. 1974).

otherwise conduct a defense, courts must consider whether a reasonable attorney should have been on notice that such an exam was necessary.   *See, e.g., Devier v. Zant,* 3 F.3d 1445, 1451 (11th Cir. 1993) (concluding that "the failure of [the defendant's] attorneys to introduce psychological evidence as to how [the defendant's] general mental status affected the voluntariness of his confession does not amount to ineffective assistance of counsel").   Moreover, to establish prejudice resulting from counsel's failure to investigate and pursue a claim of incompetency, the defendant must demonstrate that "a real, substantial, and legitimate doubt" existed concerning his mental competency at the time of his trial.   *Adams*, 764 F.2d at 1367 (concluding that "[s]ince the requisite doubt has not and apparently could not have then been raised, the attorney's conduct in investigating and his decision not to pursue a claim of incompetency did not result in prejudice"); *see also Oats v. Singletary,* 141 F.3d 1018, 1025 (11th Cir. 1998) (concluding that the defendant failed to demonstrate prejudice based on counsel's failure to adequately argue he was incompetent to proceed because the defendant failed to show that "there [was] a reasonable probability that the trial judge would have determined that [he] was incompetent to stand trial").

The state court's finding that Petitioner failed to demonstrate he was not competent is a factual finding entitled to a presumption of correctness.   *See, e.g., Oats*, 141 F.3d at 1025 (citing *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Maggio v. Fulford*, 462 U.S. 111, 117 (1983)).   Petitioner has not established that a real, substantial, and

legitimate doubt existed concerning his mental competency at any point during the proceedings.   Petitioner clearly understood the proceedings against him, including the penalties he faced if convicted, and he was able to, and in fact did, consult with standby counsel at various times throughout the proceedings.   *See, e.g.*, Ex. A-1 at 11-30; Ex. A-5 at 809-14, 824.   The record reflects Petitioner filed and argued multiple motions, raised numerous objections, and complied with the rules of the court.   Petitioner, therefore, has not demonstrated that the trial court erred by failing to conduct a competency hearing.

For these same reasons, standby counsel had no reason to move for a competency determination.   Moreover, "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"   *Faretta*, 422 U.S. at 834 n.46.   Finally, a reasonable probability does not exist that Petitioner would have been found to be incompetent had standby counsel sought a competency determination.   Thus, Petitioner has not established that standby counsel was deficient for failing to request a competency determination nor has he shown that prejudice resulted from standby counsel's failure to do so.   Accordingly, ground three is denied pursuant to section 2254(d).

### D.   GROUND FOUR

Petitioner contends he may be incompetent at the time he is scheduled to be executed, and therefore, his execution would violate the Eighth Amendment.   (Doc. 1 at 13).   Petitioner raised this ground in his Rule 3.851 motion.   The Supreme Court of

28

Florida determined the ground was not ripe.   *Barnes II*, 124 So. 3d at 918.

The Supreme Court of the United States had held that a *Ford*[7] claim does not become ripe until the prisoner's execution is imminent.   *See Panetti v. Quarterman*, 551 U.S. 930, 946-47 (2007).   Thus, ground four is dismissed without prejudice to Petitioner's right to raise the issue when it becomes ripe for adjudication.

## IV.   CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009).   When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."   *Slack*, 529 U.S. at 484; *Lamarca*, 568 F.3d at 934.   However, a prisoner need not show that the appeal will succeed.   *Miller-*

---

[7]*Ford v. Wainwright*, 477 U.S. 399 (1986) (holding that "the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane.").

*El v. Cockrell*, 537 U.S. 322, 337 (2003).

This Court finds that reasonable jurists would find this Court's assessment of ground one debatable.   Thus, a certificate of appealability will be granted regarding whether the state court's appointment of special counsel to present mitigation evidence violated Petitioner's right to self-representation.   Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the remaining grounds debatable or wrong.   Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable.   Therefore, the Court will deny Petitioner a certificate of appealability as to grounds two through four.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.    The Petition for Writ of Habeas Corpus filed by James Barnes (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.    Petitioner is **GRANTED** a certificate of appealabilty as to ground one and denied a certificate of appealability as to ground two through four.

3.    The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 8th day of February, 2016.



ROY B. DALTON JR.
United States District Judge

30

Copies to:
Counsel of Record